The Great Western Insurance Company v. Thayer.

---

The Great Western Insurance Company v. Robert H. Thayer and another.

(General Term, First Department, November, 1871.)

When the charter of an insurance company provided that the company might receive, as additional security to its dealers, notes for premiums in advance, under a regulation and agreement that they should "be deemed the absolute property of the company, and might be used for the payment of loss and liabilities, and for any other purpose connected with the business of the company, and when negotiated and in the hands of third persons, shall not be subject to any equitable claim or offset,"—*Held*, that the notes so given might be transferred as collateral for debts due from the company, or in absolute payment, without being in the hands of the transferee subject to an equitable defence, by the maker, of want of consideration, &c.

This was an action upon a promissory note.

The complaint set forth the organization of the plaintiff as an incorporated insurance company under the laws of this State, and that it carried on its business in the city of New York; that the defendants, as copartners, made their promissory note, bearing date December 31st, 1866, to the order of the Washington Marine Insurance Company, payable twelve months after date. That the Washington Marine Insurance Company had indorsed the note in blank, and negotiated and transferred it to the plaintiff, before maturity, for a valuable consideration, and that the plaintiff held and owned the same. That the note had been presented for payment at maturity, which was refused, and the note protested, etc. The answer did not deny the making or transfer of the note,

but averred that it had been given to the Washington Marine Insurance Company by the defendants without consideration, and for the accommodation of that company, and, upon agreement, that the defendants were not to be liable thereon, except in case they should thereafter procure insurances in the company, when the premiums thereon might be and become payable on the note, and that the note, beyond the amount of such premiums, should not be required of the defendants; that the defendants, after giving the note, had not effected any insurance with the company, and were not, at the date of the note or afterward, indebted to the company, but, on the contrary, that the company were indebted to the defendants in a large amount; that the plaintiff took the note knowing the terms upon which it had been given, and the want of consideration therefor, etc. And it also set forth that the note was taken by the plaintiff as collateral security for an indebtedness to it of the Washington Marine Insurance Company.

Upon the trial before the court and a jury, the note was given in evidence as follows:

"$1,250.                    NEW YORK, *Dec.* 31*st*, 1866.

"Twelve months after date we promise to pay to the order of the Washington Marine Insurance Company of the city of New York, $1,250, for value received, payable at the Marine National Bank.

"No. 77.   Due January 3d, 1868.

                              "THAYER & SARGENT."

It also appeared that in the fall of 1866 the Washington Marine Insurance Company, being indebted to the plaintiff upon admitted claims for losses to the amount of about $30,000, gave its three notes to the plaintiff to that amount for the same, and as collateral thereto notes receivable amounting to over $30,000, reserving the right to substitute other collaterals from time to time, as the company should require return of special paper, the collaterals being lodged with E. J. Brown and Charles Gould, to hold for the plaintiff. The three notes of the company were for $9,994.76, falling due

October 29th, 1866 ; for $9,945.70, due November 20th, 1866; and for $9,943.67, due December 29th, 1866. The first two were paid at maturity, and $5,000 on the last, and a proportionate amount of the collaterals taken up, leaving due upon the last note $4,943.67 and interest, and of the collaterals remaining in the hands of Brown and Gould to secure it, $5,100.

In November, 1866, the Washington Marine Insurance Company, being in embarrassed circumstances, resolved to obtain subscription notes in advance of premiums, in accordance with certain provisions of its charter, which were as follows, viz. :

"Section 3. When one hundred and fifty thousand dollars of the capital stock shall be subscribed for, and paid in cash, the company, as an additional security to its dealers, may, from time to time, receive notes for premiums in advance from persons intending to transact business with said company. Such notes shall be received under the following regulation and agreement, to wit: They shall be drawn to the order of the company, and made payable at or within twelve months from date. As to third parties, they shall be deemed the absolute property of the company, and may be used for the payment of loss and liabilities, and for any other purpose connected with the business of the company; and when negotiated, and in the hands of such third parties, shall not be subject to any equitable claim or offset, as between the makers and the company, whether existing at the time of their negotiation or accruing afterward. As between the makers and the company, the makers shall be liable merely to the extent of the premiums accrued, and for loss and liabilities of the company, after the cash capital and all and every other resource of the company shall have been first exhausted. At the maturity of any such note (or note given in renewal thereof), the company shall protect and pay the same upon receiving from the maker thereof, in cash, the amount due from such maker from premiums written upon such note, up to that time, together with a new note for the

The Great Western Insurance Company *v.* Thayer.

difference between the amount so written, and the amount of the note so maturing, interest at the rate of seven per cent per annum, being allowed for premiums not yet matured; such new note shall be upon the same credit as the original note, and be subject to the same provisions, terms and conditions.   All return premiums made upon such notes after the renewal thereof, shall be made in cash, and a new note of like character, taken for the amount.   If any such return of premium shall be made after a dividend made upon the same, an equivalent for such dividend shall be retained by the company out of the money retained."

It also appeared, that the note in suit was taken by the Washington Marine Insurance Company with a large number of others, under the resolution mentioned, and the above provisions of its charter; its liabilities at the time being in excess of its assets, and that it afterward substituted it for a portion of collaterals originally held by the plaintiff for a balance due to the plaintiff from it; that in the spring of 1867, the Washington Marine Insurance Company stopped business, and the note in suit, with the other collaterals held by Brown and Gould, in trust for the plaintiff, was turned over to it by them; that at the time of the failure the defendants had taken no insurances in the Washington Marine Insurance Company.

The judge ordered a verdict for the plaintiff for the amount of the note, and the plaintiff now moved for judgment thereon.

*Joseph H. Choate*, for the plaintiff.

*Benedict and Benedict*, for the defendant.   .

Present—INGRAHAM, P. J., and CARDOZO, J.

CARDOZO, J.   The pleadings in this case raise no question of the ownership of the note by the plaintiffs.   The allegations in respect to that subject made in the complaint are not

denied in the answer, and the defendants have not set up any-
thing in their answer to impeach the plaintiffs' title.    The
only question, therefore, for us to consider, is whether the
defendants can avail themselves of any equities to which the
note might have been subject if it remained in the hands of
the Washington Marine Insurance Company.    That question,
it seems to me, is answered in the negative by the charter
under which the note was made.

The proof shows that the note was a subscription one, and
by the third section of the charter, they are to be deemed the
absolute property of the company, "and may be used for the
payment of loss and liabilities, and for any other purpose con-
nected with the business of the company; and when nego-
tiated and in the hands of third persons, shall not be subject.
to any equitable claim or offset."    This, it seems to me,
authorizes a transfer, either in absolute payment or as secu-
rity for the payment of a valid debt of the company.    (*How-
land* v. *Myer*, 3 N. Y., 290.)

There should be judgment for the plaintiffs on the verdict,
with costs.

